**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUSTIN MOHN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-3535** |
| | : | |
| **MIGUEL CARDONA, THE UNITED** | : | |
| **STATE DEPARTMENT OF** | : | |
| **EDUCATION** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                    **December 20, 2022**

Justin Mohn returns for the third time this year seeking to affix blame for his economic condition on a student loan he agreed to repay twelve years ago to finance his college education. We described his situation seven months ago in dismissing the same claims. No facts changed: He signed a student loan to pay for a Penn State education.  He graduated with a bachelor's degree four years later and worked before losing his job. He claims the Department of Education encourages high school students to attend college but does not advise white male students of the risks of a college education financed through student loans. He now claims he cannot find employment eight years after graduating college as an overeducated white male burdened with an approximate $80 monthly student loan payment. He claims the Department negligently and fraudulently induced him to borrow money and then pay it back. We twice dismissed these pro se claims earlier this year. Mr. Mohn returns after exhausting administrative remedies under the Federal Tort Claims Act. We must substitute the United States as the party in interest. We lack jurisdiction over Mr. Mohn's claims against the United States. The United States is immune from suit for these claims. Mr. Mohn cannot allege how the United States waived its immunity for his theories now unsuccessfully plead three times. We dismiss Mr. Mohn's Complaint with prejudice as he cannot assert these claims against the United States as a matter of law.

## I.   Alleged facts

     Justin Mohn borrowed money from the United States through federal student loans beginning in 2010 to finance his college education at Pennsylvania State University.[1] Mr. Mohn graduated in 2014 with a bachelor's degree in Agribusiness Management.[2] Mr. Mohn could not find a full-time job and began working part-time jobs.[3] Mr. Mohn began making loan payments on his federal student loans six months after his 2014 graduation.[4]

     Mr. Mohn moved to Colorado in 2015 and accepted a full-time job there.[5] His lower income combined with an obligation to repay his student loans caused him "quality of life damages."[6] Mr. Mohn accepted another job by October 2016 earning a slightly higher hourly wage but his employer terminated his employment.[7] Mr. Mohn claims the burden of his monthly student loan payments while "mal-employed" and unemployed caused his inability to save money leading to a "snowball effect" of debt.[8] Mr. Mohn attributes his inability to secure a job because potential employers "perceive[d] him as an overeducated, white male which led to affirmative action against him …."[9] Mr. Mohn returned home to Pennsylvania to live with his parents.[10]

     Mr. Mohn does not allege the current status of his student loans. He incurred a line of credit with a $3,400 balance, a credit card balance of over $6,900, and rent of over $4,600 all because of his obligation to repay his student loan debt with a current balance of over $12,000 adversely affecting his credit score.[11] Mr. Mohn ultimately paid back his creditors and rent with unemployment benefits, but his student loan remains outstanding.[12]

     Mr. Mohn, now for the third time, sues the United States Department of Education and Secretary Miguel Cardona under the Federal Tort Claims Act.[13] He alleges the Department of Education and Secretary Cardona failed to advise him about the "risks and appropriateness of college loans for a college education … during his loan application/origination process

constitut[ing] fraud …," including failing to provide him with "statistics, projections, or warnings of the growingly poor job market for recent collect graduates and the burden student loans will place upon [him]," and to advise him about "affirmative action laws, or the financial effects of a loan that one cannot repay …."[14]

Mr. Mohn presented his Federal Tort Claims Act claims against the Department of Education and Secretary Cardona on April 19, 2022, apparently mistakenly serving the United States Marshals Service instead of the Department of Education.[15] The United States Marshals Service forwarded Mr. Mohn's claim to the Department of Education in July 2022.[16] The Department denied Mr. Mohn's administrative claim under the Federal Tort Claims Act on August 12, 2022.[17]

Mr. Mohn now asserts fraud claims against the Department of Education and Secretary Cardona under the Federal Tort Claims Act.[18] He again seeks $10 million in compensatory and punitive damages, an order directing the Department of Education to reimburse him the $4,000 in principal he paid on his loan, and an order directing the Department to discharge the balance on his student loan.[19]

## II.   Analysis

The United States moves to dismiss Mr. Mohn's claims for lack of subject-matter jurisdiction and failure to state a claim.[20] The United States offers four reasons: (1) we must substitute the United States as the sole and only proper defendant in a Federal Tort Claims Act case and dismiss Secretary Cardona and the Department of Education with prejudice; (2) we lack subject-matter jurisdiction because the United States is immune from fraud, misrepresentation, and deceit claims as alleged; (3) Mr. Mohn failed to timely exhaust his administrative remedies and neither equitable tolling nor the discovery rule can toll the limitations period; and (4) if we find

we have jurisdiction and further find Mr. Mohn's administrative claims are timely exhausted, we must dismiss the claims because Mr. Mohn fails to plausibly allege causation.

Mr. Mohn opposes the motion.[21] Mr. Mohn's latest complaint suffers from the same defects as earlier explained to him in *Mohn I* and we dismiss his complaint with prejudice.

### A.  The United States is the only proper defendant.

The United States is the only proper defendant in a Federal Tort Claims Act case.[22] Mr. Mohn concedes the substitution of the United States for the Department of Education and Secretary Cardona.[23] We dismiss the claims against the Department and Secretary Cardona with prejudice. We substitute the United States as the proper defendant and analyze Mr. Mohn's claims as against the United States.[24]

### B.  We lack subject-matter jurisdiction over Mr. Mohn's complaint.

The United States moves to dismiss Mr. Mohn's complaint for lack of subject-matter jurisdiction, arguing it is immune from misrepresentation and deceit claims he again asserts. The United States makes a facial challenge to our jurisdiction.[25] In a facial attack under Rule 12(b)(1), our inquiry "is limited to the allegations in the complaint, the documents referenced in or attached to the complaint, and matters in the public record."[26] We accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences from them in favor of Mr. Mohn.[27] Where a defendant challenges subject-matter jurisdiction based on sovereign immunity, it bears the burden of showing immunity applies.[28]

Subject-matter jurisdiction defines a federal court's authority to hear a "given type of case" and represents "the extent to which a court can rule on the conduct of persons or the status of things."[29] Our subject-matter jurisdiction involves our power to hear a case and we have an independent obligation to determine whether subject-matter jurisdiction exists even where a party

does not challenge it.[30] We must dismiss a complaint in its entirety if we conclude we lack subject-matter jurisdiction.[31] We cannot rule on the merits of a claim where we lack jurisdiction because "to do so is, by very definition, for a court to act ultra vires."[32]

In the "unique context of the [Federal Tort Claims Act], *all elements of a meritorious claim are also jurisdictional*," with jurisdictional and merits issues overlapping.[33] Mr. Mohn is not required to prove a Federal Tort Claims Act jurisdictional element for us to maintain subject-matter jurisdiction over his complaint, but he must plausibly allege all six elements under the Act "not only to state a claim upon which relief can be granted but also for [our] subject-matter jurisdiction over the claim."[34]

Mr. Mohn must plausibly allege the elements of a claim under the Act for us to maintain subject-matter jurisdiction. The claim must be: "(1) against the United States, (2) for money damages, … (3) for injury or loss of property, or personal injury or death, (4) caused by the negligent or wrongful act or omission of any employee of the Government, (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[35]

### 1. The United States is immune from misrepresentation and deceit claims.

The United States "enjoys baseline immunity from suit."[36] Absent a waiver, the United States, its agencies and their employees acting in their official capacities are immune from suit.[37] Consent to be sued "must be 'unequivocally expressed,' and the terms of such consent define the court's subject matter jurisdiction."[38]

The Federal Tort Claims Act is a limited waiver of the sovereign immunity of the United States. The Act's limited waiver of sovereign immunity must be "strictly construed."[39] Congress

passed the Act "primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances."[40]  Liability is defined "in accordance with the law of the place where the act or omission occurred."[41]

The Act precludes recovery for, among other claims, "misrepresentation" and "deceit."[42] We earlier explained in *Mohn I* the "misrepresentation exception" bars claims for intentional or negligent concealment, misrepresentation, or omission of material fact.[43] "Where the gravamen of a claim is the government's failure to use due care in obtaining ***and communicating*** information, this Court lacks jurisdiction."[44] This includes fraud claims.[45] A "misrepresentation or deceit" for purposes of the Act is "a communication of misinformation upon which the recipient relies."[46]

Mr. Mohn's administrative claim complains, in summary, the Department of Education:

- Negligently or wrongfully and/or omitted advising Mr. Mohn of the "risks and appropriateness" of college loans during his loan application process constituting fraud;[47]

- Had "ample knowledge and data that would lead them to predict the risks and or appropriateness of [Mr. Mohn's] loan and the likelihood that the loan would only impose a financial burden on [him] who would then be unable to pay it back," "knew" Mr. Mohn had no job, income, or assets "at the onset of the loan," "knew" Mr. Mohn is a white male and "could be the prime target of affirmative action in the workplace," and failed to make him or his parents aware of these risks all with "fraudulent intent";[48]

- Fraudulently concealed or omitted the risks and appropriateness of the loan, knew the loan would impose a financial burden on Mr. Mohn, and intended Mr. Mohan to take out a loan by misleading him and his parents;[49] and,

- Would be liable if it were a private person.[50]

Mr. Mohn now similarly alleges in summary fashion:

- The Department, in supplying student loans, "induced" Mr. Mohn to borrow money based on its "omissions, concealment, and or nondisclosure," including as "toxic or predatory" loans which Mr. Mohn claims to be a "negligent or wrongful act";[51]

- The Department made "affirmative misstatement[s] or omission[s]," including "half-truths";[52] and

- The Department fraudulently concealed and/or omitted the risks of student loans.[53]

The United States argues Mr. Mohn is again attempting to hold it liable on a fraud, fraudulent concealment, negligent or fraudulent misrepresentation theory and, in fact, Mr. Mohn characterizes his complaint as pleading "negligent or fraudulent misrepresentation, fraudulent concealment, nondisclosure, and omission, as well as … for deceptive conduct" under Pennsylvania statute.[54] As such, the United States argues Mr. Mohn's complaint falls squarely within the Act's misrepresentation and deceit carve out and the Federal Tort Claims Act does not apply, divesting us of subject-matter jurisdiction.

Mr. Mohn disagrees we lack subject-matter jurisdiction. He argues if we construe his complaint as "too similar to fraud, misrepresentation, and deceit," we should not dismiss his complaint with prejudice because he "can be more precise in future filings and as the parties' arguments develop …."[55] But that is not the standard on a motion to dismiss under Rule 12(b)(1); we do not assess our subject-matter jurisdiction based on evolving tort theories. We must evaluate the basis of our subject-matter jurisdiction based on the pleading before us. Mr. Mohn pleads misrepresentations – either by omissions or statements – deceptions, and fraud by the Department in failing to advise him and his parents about a host of obvious risks in borrowing money – including the possibility the borrower may not be able to pay off his student loan debt – and other risks such as failing to warn him as an overeducated white male he would "be the prime target of affirmative action" preventing him from securing sufficient employment.

Mr. Mohn continues to allege but for the United States' misrepresentations and omissions on which he relied, he would not have suffered financial injury in the form of debt from his student loans. We already explained to Mr. Mohn claims based on his misrepresentation, intentional or negligent concealment, or omissions of material fact and his claims grounded in the United States'

failure to use due care in communicating information to him are excepted from the limited waiver in the Federal Tort Claims Act and we dismissed those claims for lack of jurisdiction.[56]

Mr. Mohn suggests the United States misunderstands the nature of his complaint. He argues the "essence" of his complaint is "*not* the communication surrounding the loan" but rather "omissions or lack of communications also caused in injury in addition to the financial burden of the loan."[57] Under Pennsylvania law, an omission *is* a fraud claim based on intentional non-disclosure with the same elements of fraud and the added element of an independent duty to disclose the omitted information.[58] We reject Mr. Mohn's argument his "omission" claim is somehow different than his fraud or misrepresentation claim. The essence of Mr. Mohn's claim is a misrepresentation by the United States in its communication regarding student loans on which Mr. Mohn and his parents relied when borrowing federal dollars to finance his education.[59] We lack subject-matter jurisdiction over his claim.

He also suggests his claim is the "negligent act of supplying the loan itself" rather than the misrepresentations in the extension of the loans.[60] We first question – and Mr. Mohn does not plead – how the federally funded student loan program constitutes negligence by the federal government. But even so, this is not Mr. Mohn's allegation. The substance of Mr. Mohn's repeated assertions is the United States' alleged communication of misinformation. The heart of his claims in *Mohn I* are alleged misstatements and omissions of information by the United States relating to the risks of taking out a student loan. We already dismissed this claim after explaining to Mr. Mohn it is outside the limited waiver of sovereign immunity in the Federal Tort Claims Act. He had an opportunity to replead, including to advance his new "negligent act of supplying the loan itself" theory, but did not. His lawsuit then and now is based on the United States' failure to advise him of the risks of a student loan he claims he cannot repay because he is an overeducated white male

subject to affirmative action policies by employers generally. He has no independent negligence claim; his entire action is based on communication of misinformation or omission of information by the United States.

We lack subject-matter jurisdiction over Mr. Mohn's claims against the United States.

### 2. Mr. Mohn did not timely exhaust administrative remedies barring jurisdiction.

Mr. Mohn's complaint also suffers from a second jurisdictional defect. The Federal Tort Claims Act requires exhaustion with the appropriate administrative agency.[61] A claimant must first "present" his claim to the appropriate federal agency.[62] The exhaustion requirement "is jurisdictional and cannot be waived."[63] We "may dismiss a claim brought under the [Federal Tort Claims Act] for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the plaintiff has not exhausted his administrative remedies prior to filing suit."[64]

Mr. Mohn must present his claim to the Department of Education within two years after the claim accrues.[65] We are reminded by our Court of Appeals we must "carefully construe the time limitations of the [Federal Tort Claims Act] so as not to extend that limited waiver beyond that which Congress intended."[66] A tort claim accrues at the time of injury.[67] Mr. Mohn alleges he presented his claim to the Department of Education on April 25, 2022.[68] This means his injury must have accrued no earlier than April 25, 2020 to be timely. But by Mr. Mohn's own pleading, he began suffering financial injury in 2014 and 2015 when the obligation to repay his student loans caused him damages.[69] Mr. Mohn is far outside the two-year limitations period.

Although he pleads injuries beginning in 2014 and 2015, Mr. Mohn alleges "a cause of action was not yet warranted, nor was there reason to suspect wrongdoing or a wrongdoer at the time."[70] But his theory is not plausible. Mr. Mohn knew he had an obligation to repay his loans as early as 2014, six months after his graduation, and pleads the obligation caused him financial harm.

Mr. Mohn implicitly recognized his limitations problem by alleging the discovery rule and/or equitable tolling should be applied to toll the two year period until August 24, 2020.[71] According to Mr. Mohn, August 24, 2020 is the date when the United States Supreme Court denied his petition for a writ of certiorari in another case against another defendant.[72] He alleges he did not discover the extent of his injury and the "wrongdoing" by the Department of Education until the denial of the petition for writ of certiorari.

Equitable tolling may apply "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting [his or] her rights; or (3) where the plaintiff has timely asserted [his or] her rights mistakenly in the wrong forum."[73] But Mr. Mohn does not allege the United States mislead him with regard to his claim or some extraordinary circumstance prevented him from timely asserting his rights or he timely asserted his rights mistakenly in the wrong forum.

We recognize a "discovery rule" exception for Federal Tort Claims Act claims involving medical malpractice.[74] Claims accrue "not at the time of injury, but rather when a plaintiff knows of both the existence and cause of his injury."[75] Mr. Mohn pleads he began to suffer injury in 2015 as a result of his student loan debt. Mr. Mohn pleads his financial problems in 2015 were caused by his student loan obligations.[76] But, he alleges, these admitted injuries were "mere pinpricks in comparison to that which would come in the following years, and did not warrant a cause of action at that time or indicate a wrongdoer or wrongdoing" and he "would not have filed this complaint against the [United States] if his student loan and college degree benefits eventually outweighed the costs in the following years, such as if [he] did find a career that allowed him to pay off the loan."[77] He also alleges he would not have filed his complaint against the United States if he had been successful in his 2017 Title VII affirmative action complaint against his former employer

Progressive in Colorado. He alleges if he had been successful he would have had the money to pay off his student loan debts.[78] But this has nothing to do with his claim the United States misrepresented the risks of student loans. By his own pleading, he knew the risks of his student loans in 2014 when he graduated from college and began making payments on the loan. There is no alleged basis to apply the discovery rule.

Mr. Mohn failed to present his tort claim to the Department of Education within two years of the accrual of his cause of action. Accepting all well-pleaded allegations in his complaint and drawing all *reasonable* inferences from the allegations, there is no basis to toll the limitations period under 28 U.S.C. § 2401(b). We lack subject-matter jurisdiction and dismiss Mr. Mohn's claim with prejudice.

### C.  We dismiss with prejudice as amendment will be futile.

We dismiss Mr. Mohn's complaint with prejudice as amendment will be futile. Our Court of Appeals directs us leave to amend "should be freely given 'when justice so requires.'"[79] Whether to grant a motion is within our discretion "circumscribed by the Rule 15's directive in favor of amendment [which] must be 'exercised within the context of liberal pleading rules.'"[80]

To determine whether leave to amend might reasonably be denied, we are guided by the factors in *Foman v. Davis*.[81] Under *Foman*, we may deny leave to amend based on "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility."[82] "The *Foman* factors are not exhaustive, allowing a court to ground its decision, within reason, on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff. All factors are not created equal, however, as 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'"[83]

The United States contends we should dismiss Mr. Mohn's complaint with prejudice because amendment would be futile. "Futility means that after amendment, the complaint would still fail to state a claim upon which relief could be granted" and "alone can be a reason to deny a motion to amend a complaint."[84]

We twice dismissed Mr. Mohn's complaints against the Department of Education and Secretary Cardona – now dismissed and the United States substituted as the proper defendant – explaining to Mr. Mohn most recently in April of this year the United States is immune from common law tort claims and Pennsylvania's consumer protection statute and his failure to exhaust his administrative remedies deprived us of jurisdiction.[85] We then dismissed Mr. Mohn's amended complaint without prejudice as to possible claims under the Federal Tort Claims Act following exhaustion of his administrative remedies and granted him leave to file a second amended complaint by a date certain or, absent filing a timely second amended complaint, seeking relief after exhausting his claims against the United States if possible.[86] Mr. Mohn elected not to amend his complaint and we closed the case without prejudice to him to timely file a new complaint after exhausting appropriate remedies if available.[87]

Mr. Mohn then filed this complaint after an untimely presentation of his claims to the Department of Education. He returns with the identical claims, including a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law we earlier dismissed explaining the United States is immune from suit under the Pennsylvania statute. He did nothing to cure the deficiencies in his earlier complaints in *Mohn I* except for presenting his claim to the Department of Education which, on the face of his complaint, is untimely.

No amendment can cure the deficiencies in Mr. Mohn's pleading. The United States is immune from suit for the fraud-based misrepresentation claims Mr. Mohn alleges and there is no

possibility to timely present his claims to the Department of Education to exhaust his administrative remedies. We dismiss his complaint with prejudice.

### D.  We need not reach the United States' merits argument.

The United States argues we must still dismiss Mr. Mohn's complaint under Rule 12(b)(6) because he fails to plausibly allege causation. We need not reach this issue having concluded we lack subject-matter jurisdiction over Mr. Mohn's claims.

## III.  Conclusion

We dismiss Mr. Mohn's Complaint with prejudice.

---

[1] ECF Doc. No. 1 at 153, ¶ 6. We use the pagination assigned by the CM/ECF docketing system.

[2] *Id.* ¶ 7.

[3] *Id.* ¶ 9.

[4] *Id.* ¶ 7. Mr. Mohn made monthly loan payments of $165 until 2018 when, after approval to reduce his monthly payment under an income driven repayment plan, he began paying $80.45 a month in student loan payments. *Id.* ¶¶ 7–8.

[5] *Id.* at 154, ¶ 10.

[6] *Id.* Mr. Mohn identifies his quality of life damages as: he "would have been able to afford living in a single apartment if he didn't need to make student loan payments, but his student loan payments forced him to live in a cheaper apartment with roommates he didn't know, which eventually led to interactions with the Colorado Springs Police Department over domestic issues." *Id.*

[7] *Id.* ¶ 11.

[8] *Id.* ¶ 12.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 5, § IV.

[12] *Id.*

[13] 28 U.S.C. §§ 1346(b)(1), 2679(b)(1). We twice dismissed, consistent with our screening obligations under 28 U.S.C. § 1915(e)(2)(B), Mr. Mohn's earlier complaints against the Department of Education and Secretary Miguel Cardona for negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment, claims under the Higher Education Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law. *See Mohn v. Cardona,* No. 22-773, ECF Doc. Nos. 5, 6, 10, 11, 14 ("*Mohn I*"). We did not screen the complaint in this action because Mr. Mohn paid the filing fee.

[14] ECF Doc. No. 1 at 155, ¶ 13. We explained to Mr. Mohn the United States is immune from his common law tort claims and Pennsylvania's consumer protection law, the United States did not waive its immunity for misrepresentation claims under the Federal Tort Claims Act, and even if he could proceed under the Act, he failed to exhaust his administrative remedies. *See Mohn I*, ECF Doc. No. 10. We also explained he could not proceed on claims under the Administrative Procedure Act, 5 U.S.C. § 706, the Declaratory Judgment Act, 28 U.S.C. § 2201, the Higher Education Act, 20 U.S.C. §§ 1001–1155, the mandamus jurisdiction statute at 28 U.S.C. § 1361, and the Truth in Lending Act, 15 U.S.C. § 1650. We dismissed his amended Complaint in *Mohn I* without prejudice to claims under the Federal Tort Claims following exhaustion of his administrative remedies or for mandamus if possible. *Mohn I*, ECF Doc. No. 11.

[15] ECF Doc. No. 1 at 21, 54.

[16] *Id.* at 54.

[17] *Id.* at 44–46.

[18] *Id.* at 2–6, 152–168.

[19] *Id.* at 5, § V.

[20] ECF Doc. No. 9. A party may challenge the Court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) by either a facial or factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A "facial" attack challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and requires us to "consider the allegations of the complaint as true." *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)). A "factual" attack challenges the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or "otherwise present[ing] competing facts." *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Unlike a facial attack, a factual challenge allows us to weigh and consider evidence outside the pleadings, the plaintiff has the burden of proving jurisdiction, no presumption of truthfulness attached to the plaintiff's allegations, and we may "weigh the evidence and satisfy [ourselves] as to the existence of [our] power to hear the case." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

The United States facially challenges our jurisdiction. *See* ECF Doc. No. 9 at 5 (using the pagination assigned by the CM/ECF docketing system). This means we consider the allegations of Mr. Mohn's complaint as true. The standard applied to a facial attack on our subject-matter jurisdiction is the same as the standard applied to a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6). *Petruska*, 462 F.3d at 299 (citing *Mortensen*, 549 F.2d at 891). When reviewing a motion to dismiss under Rule 12(b)(6), we accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiff. *Newark Cab Association v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

[21] ECF Doc. No. 10.

[22] *Hampton v. Jones*, No. 21-2880, 2022 WL 4820355 at *2 (3d Cir. Oct. 3, 2022) (citing 28 U.S.C. § 2671 *et seq.*); *CNA v. United States*, 535 F.3d 132, 138 n. 2 (3d Cir. 2008).

[23] ECF Doc. No. 10 at 13 (using the pagination assigned by the CM/ECF docketing system).

[24] *Grover v. VA General Counsel*, No. 20-3377, 2021 WL 4315930 at *1, n. 2 (3d Cir. Sept. 23, 2021). In *Grover*, the pro se plaintiff alleging malpractice at the Veterans Administration Medical Center sued the "VA General Counsel." Our Court of Appeals interpreted the complaint to have been filed against the United States as the only proper defendant in a Federal Tort Claims Act case. *Id.*

[25] ECF Doc. No. 9 at 10.

[26] *Vanderlock v. United States*, 142 F. Supp. 3d 356, 359 (E.D. Pa. 2015).

[27] *Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*, 968 F.3d 264, 269 (3d Cir. 2020) (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017)).

[28] *Vanderlock*, 142 F. Supp. 3d at 359 (citing *M & M Stone Co. v. Pennsylvania Dep't of Envtl. Prot.*, No. 07-4784, 2008 WL 4467176, at *13 (E.D. Pa. Sept. 29, 2008)).

[29] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (cleaned up).

[30] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

[31] *Id.* (citations omitted).

[32] *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 101–02 (1998)).

[33] *Id.* (emphasis added) (citing *FDIC v. Meyer*, 510 U.S. 471, 477 (1994)).

[34] *Id.*

[35] *Id.* at 746, 749 (quoting *Meyer*, 510 U.S. at 477); *see also* 28 U.S.C. § 1346(b).

[36] *Pellegrino v. United States of America Transp. Sec. Admin.*, 937 F.3d 164, 169 (3d Cir. 2019) (citing *Millbrook v. United States*, 569 U.S. 50, 51–52 (2013)).

[37] *Meyer*, 510 U.S. at 475.

[38] *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).

[39] *Id.* (quoting *Livera v. First Nat'l State Bank of N.J.*, 879 F.3d 1186, 1194 (3d Cir. 1989)).

[40] *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)).

[41] 28 U.S.C. § 1346(b)(1).

[42] 28 U.S.C. § 2680(h).

[43] *United States v. Neustadt*, 366 U.S. 696, 706–11 (1961).

[44] *Nicklas v. United States*, No. 13-1122,  2014 WL 309323, at * 3 (W.D. Pa. Jan. 27, 2014) (emphasis added) (citing *Neustadt*, 366 U.S. at 706, 710–11). In *Nicklas*, the plaintiff sued the United States alleging its negligence caused the death of her husband while under the care of the Veterans Affairs' health system. The plaintiff brought a claim for intentional and negligent infliction of emotional distress claiming Veterans Affairs breached its duty to ensure she received the truth regarding the cause of her husband's death. Judge Schwab construed these claims as arising out of misrepresentations made by a Veterans Affairs physician and dismissed the claims because the "factual underpinnings" of the claim are "based upon alleged misrepresentations and omissions by a government agent" and barred because the Federal Tort Claims Act has not waived sovereign immunity in this regard. *Id.* at *3–4 (citing 28 U.S.C. § 2680(h)). *See also Haney v. Brennan*, 390 F. Supp. 3d 633, 644 (E.D. Pa. 2019) (claim for negligent misrepresentation cannot be maintained under the Federal Tort Claims Act).

---

[45] *Beneficial Consumer Discount Co. v. Poltonowicz*, 47 F.3d 91, 96 (3d Cir. 1995).

[46] *Id.*

[47] ECF Doc. 1 at 25, ¶ 8.

[48] *Id.* at 28, ¶ 16.

[49] *Id.* at 28–29, ¶ 17.

[50] *Id.* at 33, ¶ 20 and at 153, ¶ 5.

[51] *Id.* at 155, ¶ 13.

[52] *Id.* at 156, ¶ 15.

[53] *Id.* at 158 ¶¶ 21–22.

[54] *See* ECF Doc. No. 9 at 14 (citing Mr. Mohn's complaint at ECF Doc. No. 1 at 153, ¶ 5).

[55] ECF Doc. No. 10 at 15.

[56] *See Mohn I*, ECF Doc. Nos. 10, 11.

[57] ECF Doc. No. 10 at 17 (emphasis in original).

[58] *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 783 (E.D. Pa. 2008). Mr. Mohn alleges the United States owed him a fiduciary duty imposing on it the duty to disclose the risks and appropriateness of student loans. Mr. Mohn alleges this fiduciary duty is created by "the social contract theory reflected in the … Declaration of Independence." ECF Doc. No. 1 at 157, ¶ 15.c. Under Pennsylvania law, a fiduciary duty is created "by a confidential relationship which … may attach wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Basile v. H&R Block, Inc.*, 777 A.2d 95, 102–03 (Pa. Super. Ct. 2001) (cleaned up). Although the concept of a confidential relationship giving rise to a fiduciary duty "cannot be reduced to a catalogue of specific circumstances," relationships such as trustee, guardian and ward, attorney and client, and principal and agent give rise to a fiduciary duty under Pennsylvania law. *Id.* Mr. Mohn makes no such allegations here.

[59] *See Block v. Neal*, 460 U.S. 289, 295–96 (1983). *See also Haney*, 390 F. Supp. 3d at 644. In *Haney*, a former postal worker alleged his supervisor at the United States Postal Service misinformed him about his ability to return to his postal carrier position after he dropped out of a postal police training program. The employee sued the Postal Service for discrimination and other claims including negligence. Judge Rufe granted summary judgment to the Postal Service finding the claim styled as a negligence claim "must be viewed as a claim rooted in misrepresentation that cannot be pursued under the [Federal Tort Claims Act]." *Id.*

---

[60] ECF Doc. No. 10 at 17.

[61] *Priovolos v. Fed. Bureau of Investigation*, 686 F. App'x 150, 152 (3d Cir. 2017) (citing 28 U.S.C. § 2675(a)).

[62] 28 U.S.C. § 2675(a). Section 2675(a) provides:

> An action ***shall not*** be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, ***unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency*** in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

*Id.* (emphasis added). *See also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The [Federal Tort Claims Act] bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

[63] *Priovolos*, 686 F. App'x at 152 (quoting *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003)); *see also White-Squire*, 592 F.3d at 457 ("[b]ecause the requirements of presentation … are among the terms defining the United States' consent to be sued, they are jurisdictional.").

[64] *Knapp v. United States*, No. 18-1422, 2020 WL 969624 at *3 (M.D. Pa. Feb. 28, 2020), *aff'd*, 836 F. App'x 86 (3d Cir. 2020).

[65] *White-Squire*, 592 F.3d at 456, n. 3 (citing 28 U.S.C. § 2401(b)). Section 2401(b) provides: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

[66] *Miller v. Philadelphia Geriatric Ctr.*, 463 F.3d 266, 270–71 (3d Cir. 2006) (citing *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979)).

[67] *Id.* at 271.

[68] ECF Doc. No. 1 at 152, ¶ 1.

[69] *Id.* at 153, ¶¶ 10–12.

[70] *Id.* at ¶ 10.

[71] *Id.* at 161–62, ¶ 24.

[72] *Id.* Mr. Mohn refers to his lawsuit against his former employer Progressive Insurance. Progressive fired Mr. Mohn in August 2017. Mr. Mohn sued Progressive Insurance in the United States District Court for the District of Colorado alleging harassment, discrimination, and wrongful termination on the basis of his sex in violation of Title VII. *Mohn v. Progressive Ins.*, No. 18-812 (D. Colo.). In his Colorado action, Mr. Mohn alleged Progressive promoted women without college degrees over him. He alleged Progressive perceived him as an "overeducated/overqualified male" and paid him less money, deprived him of paid time-off benefits, and deprived him of priority in choosing job roles and schedules than less educated women. But Judge Krieger granted summary judgment for Progressive, the Court of Appeals for the Tenth Circuit affirmed the district court, and the United States Supreme Court denied Mr. Mohn's petition for certiorari. *Mohn v. Progressive Ins.*, No. 18-812, 2019 WL 2341559 (D. Colo. June 3, 2019), *aff'd*, 802 F. App'x 391 (10th Cir. 2020), *cert. denied*, 141 S.Ct. 174, 207 L.Ed.2d 1106 (June 29, 2020); *reh'g denied*, 141 S.Ct. 216, 207 L.Ed.2d 1160 (Aug. 24, 2020).

[73] *Lassegue v. United States*, No. 22-2475, 2022 WL 16629940, at *2 (3d Cir. Nov. 2, 2022) (quoting *D.J.S.-W. ex rel. Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (cleaned up)).

[74] *Miller*, 463 F.3d at 271 (citing *Kubrick*, 444 U.S. at 111).

[75] *Id.*

[76] ECF Doc. No. 1 at 161, ¶ 24.

[77] *Id.*

[78] *Id.*

[79] *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co*., 839 F.3d 242, 249 (3d Cir. 2016) (quoting Fed. R. Civ. P. 15(a)(2)).

[80] *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017) (citations omitted).

[81] 371 U.S. 178, 182 (1962).

[82] *Mullin*, 875 F.3d at 149-150 (citing *Foman,* 371 U.S. at 182).

[83] *Id*. at 150 (citations omitted).

[84] *United States ex rel. Thomas v. Siemens AG*, No. 09-4414, 2010 WL 1711775 at *5 (E.D. Pa. Apr. 26, 2010) (citations omitted).

[85] *Mohn I*, No. 22-773 at ECF Doc. Nos. 5, 6, 10, 11.

[86] *Id.*, No. 22-733 at ECF Doc. No. 11.

---

[87] *Id.*, No. 22-733 at ECF Doc. No. 14.